## Coleman *vs* Commissioners of the Lunatic Asylum.

ERROR TO THE FAYETTE CIRCUIT.

*Lunatic. Parties. Jurisdiction.*

JUDGE MARSHALL delivered the opinion of the Court.

CHANCERY.

*Case 47.*

*Oct. 20.*

The case stated.

THIS Writ of error is prosecuted for the reversal of a decree of the Fayette Circuit Court, that George Coleman pay to the Commissioners of the Lunatic Asylum, out of the profits of the estate of Henry Coleman, a lunatic, $669 16, for the support and maintenance furnished to the said Henry for about five years, during which he had remained in the Asylum, and been maintianed as a pauper, at the charge of the Commonwealth.

The proceeding was commenced by a petition in the nature of a bill in chancery, filed in the names of the Commissioners of the Lunatic Asylum, and also of the Commonwealth's Attorney for the 8th judicial district, as

relators in behalf of the Commonwealth. Henry Coleman, the lunatic, then in the Asylum in Fayette county, and George Coleman, his father, residing in Bath county, were made defendants, and the process was served upon each in the county of his residence. It is alledged in the petition, and appears in proof, that at a special term of the Fayette Circuit Court, in August, 1834, Henry Coleman, then in Lexington, was regularly found to be a lunatic, and ordered to the Asylum, the jury not knowing when he became a lunatic, nor whether he had any estate ; and the record of the proceedings states that he was visited by the Judge in the jail where he was confined, it being impossible to bring him into Court owing to his violent conduct.

Upon these facts we may here remark, that we do not doubt the jurisdiction of the Fayette Circuit Court to direct an inquest, and upon return thereof, to dispose according to law, of any lunatic found in the county, under circumstances like these, no matter where his proper residence may be. The case of *Castleman* vs *Castleman*, (6 *Dana*, 55,) does indeed decide that under the circumstances there stated, the county in which the alledged lunatic permanently resided, was the only proper county in which to hold the inquest. But that case does not decide that the Court of no other county would, under any circumstance, be authorized to direct and hold the inquest.

The statute of 1793, (1 *Stat. Laws*, 793,) gives jurisdiction to any Court of Chancery to which application shall be made by the public attorney, to enquire into the fact of lunacy, appoint a committee, and make other proper orders. While the 4th and 5th sections of the act of 1833, (1 *Stat. Laws*, 803,) provides for the case of a lunatic who being permitted to go at large is considered dangerous, and authorizes the Court to order him to the Lunatic Asylum, and if he have estate, to make the necessary orders for appropriating it to his support.

It is manifest from these provisions and from others which need not be specially referred to, that the Court having jurisdiction to hold the inquest and order the lunatic to the hospital, has jurisdiction also to make the proper orders for appropriating his estate to his maintenance

while there. And further, that it was not intended that the State should bear the charge of the lunatic's support, either in or out of the Asylum, so far as his own estate might be sufficient.

In this case then, it appears that the jury having been ignorant of any estate of Henry Coleman, and so stating in their inquest, he was received into the Asylum as a person having no estate, and was kept at the charge of the Commonwealth for about five years, when the Commissioners of the Asylum discovering that during all that period he had three valuable negro men slaves, whose hire was worth annually, much more than enough to support him, and that they had been, and were still in the possession of his father, George Coleman, in Bath county, filed this petition praying on the ground of these facts, that George Coleman might be decreed to pay for the past support of said Henry at the Asylum, out of the profits of his estate already received, and that a committee might be appointed and such other orders made as would insure the future application of his estate to his support while he should remain in the Asylum.

It has already been shown that irrespective of the fact that Henry Coleman was served with process in Fayette, and was resident, or at least commorant there when this suit was brought, the Fayette Circuit Court, as having just and properly taken jurisdiction of the lunatic, had authority to make such orders as were proper for the appropriation of his estate to his support. And as the statutes expressly provide that in case of a lunatic kept by a committee, the Court may, in making such orders, not only provide for the future, but also supply past deficiencies, we do not doubt that in this case, upon the discovery of estate not previously known, the Court had authority to provide, not only for the future support of the lunatic at the Asylum, out of that estate, but also to decree a remuneration for the expense incurred in his previous support at that institution. But this expense was defrayed by the Commonwealth and not by the Commissioners who merely disbursed the funds appropriated by the Legislature for the support of pauper lunatics at the Asylum. The Commonwealth, therefore, and not the

COLEMAN
*vs*
COMMISSIONERS
OF THE LUNATIC
ASYLUM.

Where a lunatic has been supported at State expense, the Court on petition or bill by attorney for Commonwealth, may decree in behalf of the Commonwealth out of the profits of his estate, against the person having his estate, the past expenses of keeping such lunatic, though residing in a different county from that in which the inquisition is taken, process being served on the lunatic in the county where suit is brought.

COLEMAN
vs
COMMISSIONERS
OF THE LUNATIC
ASYLUM.

Commissioners, were entitled to be reimbursed; and although the proceeding is novel, and not expressly provided for by statute, yet upon the principles which have been stated as deducible from the statutes relating to lunatics, and upon the clear equity of the case, we are of opinion that upon the discovery of estate belonging to an individual who had been supported as a pauper at the Asylum, the Commonwealth, upon information and petition by her attorney, and the Commissioners who are her more immediate agents in the premises, is entitled to a decree for reimbursement of past expenses out of the estate, if it can be had without injury to innocent individuals having claims upon it. Regularly perhaps the proceedings should be in the name of the Commonwealth, who is entitled to the decree. But we are inclined to the opinion that a petition by her attorney in a matter in which she is interested, is virtually her petition and entitles her to the benefit of the proceeding as a party.

The attorney for the Commonwealth is the proper person to apply to the Chancellor for an inquisition of lunacy.

The regular initiation of the enquiry of lunacy, is by petition and motion of the Commonwealth's Attorney, asking for the writ *de idiota inquirendo.* And we do not know that there is any necessity for changing the style of the proceeding at any subsequent stage. Nor is there any impropriety in uniting the Commissioners of the Asylum with him as relators and *petitioners*, since they have a peculiar agency in the subject and are especially concerned in that part of the proceeding which looks to the future support of the lunatic.

One who assumed to act as the committee of a lunatic and who was receiving the profits of his estate, not allowed to retain his property purchased at a reduced price, but credited by his disbursements.

George Coleman in his answer, set up various claims for debts of Henry Coleman, paid by him, some under judgments and decrees, and others upon notes and accounts. These were all allowed. He also claimed to have purchased one of the slaves under an execution against Henry Coleman, while he was in the Asylum. But the purchase was made apparently at a very inadequate price, and as George Coleman had the property of Henry in his hands, receiving the profits and acting as his committee in fact, though without any regular appointment, so far as appears, this claim was properly disallowed, and he was credited only by his advance upon the purchase, with interest. He also claimed $250 a year

for boarding or keeping his son, with a horse or two, and occasionally a mule or two. But there was no proof of any contract or understanding which authorized this claim, and the inference is, that there was none. And as there was no process on his cross bill, setting up this claim and praying satisfaction by sale of the slaves, it was properly disregarded by the Court.

But we are of opinion that there are several errors in the decree for which it should be reversed:

1st, The decree for reimbursement of part of the expenses should have been directly in favor of the Commonwealth, who furnished the money, and the relators should only have had their costs.

2nd, The amount decreed is founded upon evidence of the expense of keeping pay patients at the Asylum, and there is no evidence of the expense of keeping pauper patients, which should be the criterion in this case, up to the filing of the bill, unless extraordinary expens was incurred. As far as we can judge of this expense from the statutes on the subject, the sum allowed, unless there were some extraordinary expenses, which is not shown, is about double what it should have been.

3rd, We are of opinion that the property of the lunatic being in possession of his father, in Bath county, his father, George Coleman, should have had the option of being appointed committee of his estate, upon executing bond to hold the property subject to the future disposition of the Court, to hire the slaves with care, and to pay such portion of the annual profits, and at such times as the Court should direct, to the Commissioners of the Asylum, for the support of Henry Coleman while he should remain there; and no other committee of the lunatic's estate should be appointed, unless he should refuse.

4th, Supposing, as we do, that Henry Coleman, the lunatic, was a proper party, it was erroneous to proceed to a decree against his estate without an answer by some person appointed to act as a committee for him in the defence of this suit.

Wherefore, the decree is reversed and the cause remanded for further proceedings consistent with this opinion.

*Daniel and Apperson* for plaintiff: *Pindell* for def'ts.

*Margin notes:*

COLEMAN
vs
COMMISSIONERS
OF THE LUNATIC
ASYLUM.

A decree for part expenses of a lunatic in the Asylum should be in favor of the Commonwealth, and to the amount only which is allowed for maintaining pauper, unless in extraordinary cases.

Where the father of a lunatic is living and has the custody of his estate he should be his committee, on giving bond, if willing to take it

No decree should be rendered against a lunatic without the appointment of a committee.