Caldwell, J.
The bill of review was filed on the 10th of June, .1847. The proceeding sought to be reviewed, commenced March 5, 1837, was a bill in chancery filed by Longworth & Horne, for the purpose of foreclosing a mortgage given by Sturges & Anderson, to them, on a tract of land adjoining the city of Cincinnati. The mortgage was given to secure four promissory notes for $1,788 each, •dated 4th January, 1837, given by Sturges and Anderson, for the purchase-money of the mortgaged premises. The bill alleges that the first of these notes has become due and is unpaid, and prays *470 for a decree of payment or sale of the mortgaged premises. On the day of the filing of the bill, subpena was issued for the defendants and returned the same day, “served on Anderson, not found as to Sturges & Palmer.”
April 24th, 1839, publication of notice was issued. On the 22d' June, 1839, an entry'of publication is made, approved by the coui-t, and the cause is continued to November term, 1839. November 2,. 1839, Andrews’ answer is filed, which *admits the purchase, the giving of the notes and mortgage ; but claims that complainants have received on the mortgage debt $744.44, which ought to-be credited thereon ; states that he and Sturges have made a division of the property, for the purpose of sale, by running streets- and alleys through it, and dividing it into lots; and asks that if a sale be ordered, it be directed to be made according to a plat of the subdivision, which he sets forth as a part of his answer. Anderson further states in his answer that Sturges is insane. November 14, 1839, a replication is filed to this answer of Anderson. On the 15th November, 1839, .the following entry is made: “On motion, the court appoint A. N. Riddle, one of the masters of this court, guardian ad litem for Josiah R. Sturges, one of the defendants in the-above cause, and a lunatic, as the court is advised; and the said Adam N. Riddle appears and accepts said appointment, and is ruled to answer in sixty days, and cause continued.” The guardian ad' litem never answered. On the 4th of February, 1840, the following entry is made on the docket: “ Decree nisi filed, and bill taken as-confessed.”
On the 6th of June, 1840, the decree nisi is entered on the minutes, which, so far as the recitals are important in the present controversy, reads as follows : “ And now here to wit, on the 6th day of June, in the term of June aforesaid, this cause came on to be-heard this day upon bill, answer of Alonzo W. Anderson, replication thereto, exhibits and testimony; and thereupon the court do-find that due notice of the pendency of said bill has been given to-the said Sturges and Palmer, who are now residents of the State of Ohio, by publication, as proved at the June term of this court, and that the said Sturges and Palmer are in default for plea, answer, and demurrer to said bill; and that the guardian ad litem appointed for said Sturges, a reputed lunatic, is also in default for plea,, answer and demurrer; and thereupon the court do order said bill, as to them, to be taken as confessed; and now here the court, pro *471 ceeding to consider the said bill and answer, with the exhibits and testimony, after counsel being heard, and having fully examined the same, do find,” etc. etc.
*The court go on to find the making of the notes and mortgage, and the amount due, etc. The decree finds that the first three notes'with the interest are due and unpaid, and that the interest on the1 fourth note is unpaid, and decrees for the amount of the three notes due, principal and interest, and the interest due on the fourth note, amounting in all to $6,761.83, and directs that in default of payment of that sum with interest from February 3d, 1840, within thirty days, an order for sale of the mortgaged premises shall issue. July 25th, 1840, an order of sale was issued, and on the 6th of October, 1840, a sale of the premises was made to the complainants, Longworth and Horne, for $3,992. The sheriff, in making the sale, was governed by the plat of Sturges and Anderson. On the 11th of November, 184Q, the sale was confirmed, and the sheriff was ordered to make a deed to Longworth and Horne ; the court ordered the plat vacated, and directed the sheriff to make a deed for the whole mortgaged premises, including, as well, the streets and alleys on which the lots bounded as the lots themselves. The evidence leaves no doubt that during the time these proceedings were being had Sturges was insane. His insanity commenced near the first of the year 1839, and continued until sometime in 1844, or perhaps 1845.
The following are the principal alleged errors assigned by complainants in review:
1. The lunatic defendant was only brought into court by publication in a newspaper printed in Hamilton county.
2. If, however, the lunatic was brought into court by publication, the suit could not properly proceed against him, without making his committee or guardian a party ; and the court of common pleas exceeded its powers in appointing a guardian ad litem for the lunatic.
3. It was error to proceed to a decree without an answer from the guardian ad litem of the lunatic.
4. The decree is erroneous, being a decree pro confesso against a lunatic.
*5. The decree is erroneous, because it embraces money claimed to be due upon notes which fell due after the bills were filed. -
6. The decree of sale was erroneous, even if treated as a decree *472 rendered on hearing, being rendered in June, 1840, and the defendants being decreed to pay a certain sum with interest from February, 1840.
7. Tbe decree of sale was erroneous, because it decreed payment of two notes as due and unpaid before the bill was filed; whereas the bill only alleged one to be diie and unpaid.
8. The decree of confirmation was erroneous, because it set aside tbe plats under which the sale had been made, and ordered a deed to the purchasers for the whole property, including the spaces left for streets, for which the purchasers neither bid nor paid anything.
As to the first error assigned : Could the defendant, being a nonresident lunatic, be brought into court by publication in a newspaper, under the provisions of the 7th section of the act regulating the practice in chancery, Swan’s Stat. 701. In the first place, we would remark that the language of the statute applies to all defendants, as well lunatics as persons of sound mind. The mode of bringing parties into court, both at law and in chancery, is the sub- • ject of statutory enactment, the legislature evidently intending to .cover the whole ground. No exception is made in favor of lunatics. The 5th and 6th sections of the act provide for the service of subpoena on defendants generally. Where the defendants are non-residents of the state, the necessity of the case is provided for, by authorizing the complainant to bring them into court by the service of a subpoena, with a copy of the bill, or by making publication in some newspaper printed in the county where the proceedings are instituted, and of general circulation therein. The 57th section of the statute provides, that a party to a decree in chancery may file a bill of review in five years, with a proviso in favor of insane persons, and others laboring under disability, fixing the limitation at five years after disability removed. The legislature, in the ^formation of this code of practice, having had, as we see, the subject of lunatics before them ; having provided for them .specially, so far as the decree is concerned, and having made no such proviso in reference to the bringing them into court, we do not think the courts would be warranted in inferring such proviso.
It is contended, however, on the part of complainants in review, that although a lunatic would come within the letter of the statute, yet that, being incapable of receiving notice, he could not come within its spirit, and could not have been within the contemplation of the legislature.
*473 In support of this proposition, we are referred to the caBe of -Carew v. Johnson, 2 Sholes and Lefroy, 303, where it was held, under a statute very similar to ours, that the notice provided for •could only be considered as applicable to such persons as were capable of receiving notice, and consequently could not apply to a lunatic.
The lunatic, though incapable of defending himself, is still civilly •liable ; and it is necessary that he should be brought into court, that jurisdiction over the person should be obtained, before the •court can proceed to act. If he is within the jurisdiction of the ■court, ho should be served with process, as other parties are required to be served. The provision for giving notice by publication in a newspaper is a very imperfect mode of bringing parties into court. It is frequently altogether improbable, and sometimes ■impossible that the party or any of his friends should receive the notice; and it is only resorted to from the necessity of the case, on account of the difficulty or impossibility of giving other or more certain notice.
So far as the lunatic is concerned, he is incapable of looking after his own interests, no matter how he may be brought into court. He can do nothing toward his defense, nor can he, by any act, •conclude his rights; his defense must be intrusted to others. If served with process in the ordinary way, or if brought personally into court, his acts, or admissions, or denials, amount to nothing; he must appear and *act by a representative. In contemplation of law, he is totally incapable of understanding or appreciating the notice or process, in whatever form it may be given.
The important difference between a lunatic and a sane person does not consist so much in the mode of the court obtaining juris•diction over the person, as in the proceedings after that jurisdiction has been obtained. The legislature having liberally embraced •all parties within the provisions of the act, unless it would be clearly in violation of its spirit to include insane defendants, we could not .hold that they were without its provisions. We suppose, then, that insane persons come within the provision of the statute, and that, therefore, Sturges was properly brought into court. But Sturges, although brought into court, was insane, and this brings us to the clause of assigned errors relating to the proceedings in the progress of the cause.
*474 It is said that it was error in the court to proceed against the-lunatic, without making his committee or guardian a party, and that the court exceeded its authority in appointing a guardian ad litem.
In England, it appears to be the usual practice of the courts to make the committee of the lunatic a party to the suit, who is bound to appear and defend, and where the lunatic has not been declared such, the courts have sometimes refused to proceed until he haB' been found such by an inquisition, and a committee for him appointed.
In 1 Barbour’s Chancery Practice, 52, the mode of proceeding-is thus stated: “ The subpoena against a lunatic must be served on him personally, as in case of an infant. And it should he in presence of some competent person, or with notice to his committee, who must also be made a party defendant as such committee, to-suits respecting the lunatic’s estate, and who is bound to appear and answer with and for the lunatic, or be attached.’.’ “ The idiot or-lunatic defends the suit by his committee, who is by an order of court appointed guardian ad litem for that purpose, as a matter of course, in ordinary circumstances.”
*The duty imposed on the court, the lunatic being unable to-defend himself, is, that they must see, before they proceed to dispose of his rights, that he is represented in court by some competent person, who is bound to make such defense as the nature of the case-will permit, and to see that such representative performs his duty in the premises. If the custody of the lunatic has been committed ’to a guardian or committee whose business it is to look after his interests, and who would naturally be supposed to be possessed oftheinformation necessary to enable him properly to perform his trust, it would appear reásonable and proper that the court should appoint such guardian or committee, guardian ad litem, to defend the suit.
It is to be observed, however, that even in cases where the lunatic has a regular guardian, in the absence of statutory enactment, on the subject, the practice is for the court to appoint the guardian to defend the particular cause. He does not defend as a matter of course; it is by authority from the court. And, although the court might in most cases feel bound to appoint the general guardian, yet. it would appear reasonable that when, in the opinion of the court,, the guardian of the lunatic, either on account of his residing out of the jurisdiction of the court, or for any other cause, was not & *475 proper person to defend the suit, it should have the discretion of appointing some more suitable person to make the defense. It is not necessary for us to consider what would have been requisite, under our statute relating to the appointment of guardians for lunatics, if Sturges had been a resident of this state; he was a resident-of the State of New York. It does not appear that any guardian had been appointed for him in New York, but even if there-had, such guardian would not have been under the control of the courts of Ohio. He might have refused to appear and answer and defend. The court in Ohio could not attach him for contempt, nor remove him, in case of his refusal to defend. In such case, the court being bound to see that the lunatic had some person to defend for him, would either have to stay proceedings ^indefinitely, or appoint a guardian ad litem. There are numerous cases in which the right of the court to appoint a person to defend as guardian ad litem for a lunatic appears to be recognized.
The eighth section of the act relating to lunatics (Swan’s Stat. 571) substantially provides that the guardian of a lunatic shall be capable of suing and being sued, in- reference to the affairs of the lunatic, but makes no provision for the manner of proceeding where a defendant is a foreign lunatic, except giving the power to the guardian of such lunatic to act where he makes the application and exhibits his authority. The court having no positive rule of practice prescribed by legislative enactment, were, as a matter of course, authorized to proceed by the analogy furnished by similar cases. In contemplation of law there is a complete parallel between that of a lunatic and an infant defendant; both are liable to be made defendants, and have their rights passed upon ; both are incapable of defending themselves ; and in both cases the court before whom the proceedings are had are bound to see that their defense is conducted by a competent person, who must be recognized by the court as authorized to make defence. The legislature have provided (Swan’s Stat. 665) that in all cases where an infant is sued a guardian ad litem shall be’ appointed to defend the suit: the present not being a case provided for by statute, we think the court with great propriety adopted the same course provided for in case of infant defendants.
The next question in order is, Was it error in' the court to proceed to decree without an answer from the guardian ad litem? And in the first place we would inquire, What is the object of giv *476 Ing notice to a defendant that a suit is instituted against him? ■Common sense will at once furnish a complete answer to this question. The defendant must have an opportunity of defending against the claims sought to be enforced against him ; he must be permitted to make his response to the charges—his statement of the case, and an opportunity to present his evidence must be given. And *so vitally important is this fact of notice held, that all proceedings of courts, without it, in passing on the merits of a case, are held to be not merely erroneous, but absolutely void. Until the party is thus brought into court, all judgments and decrees made by the court are not respected as the acts of a court. If, however, the defendant has received the notice, which has been prescribed as the proper one in the case, the court are permitted, without any thing being done by the defendant, to proceed and finally ■dispose of the case. The making defense is the party’s own business, and the ordinary presumption is that he has the capacity to make it; and if he makes none, he can reasonably be held to have .admitted the claim presented against him. These are vital principles in the proceedings of courts, and without which justice could not be administered; The importance of a pai'ty having an opportunity to make defense is the same in the case of a lunatic as in that of a sane person. The same great principle governs in both ■cases. As we have already remarked, the process of the court gives ■the lunatic no information of what is claimed against him; he is incapable of receiving any such knowledge; it gives no capacity to defend; he individually can have no such capacity; the process in such case merely gives the court j urisdiction in the case. But the first step, and one absolutely necessary before the court can proceed to determine on the merits of the case, is to give the lunatic the capacity of making defense; this can only be done by a representative; some person must be authorized and required by the court to make defense. It is the duty of the person thus appointed to plead and prove to the court any matters of defense that he may find the case susceptible of. If he knows of no ■defense, or has no information in the case, he can so state in his answer. There is one thing that he can always do—he can put the case at issue. Being the representative of the defendant, merely for the purpose of making defense, and receiving no authority from the defendant himself, he can admit nothing against the defendant. He can not leave the claim of the plaintiff *477 *as admitted on record—he must not be in default—he must not leave the lunatic in default; if so, his appointment, on the-record itself, is shown to have been a vain thing—both in form and substance to have been a mere mockery. The court, in this instance, appointed a guardian ad litem, who accepted the appointment, and was ruled to answer in sixty days. Nothing more is beard of the guardian ad litem, until the court render their decree,, when they find that he is in default for answer—that Sturges, the-lunatic, is also in default for answer; and, in terms, take the bill as-to both as confessed. Now, it is not contended that it was not necessary for the court to appoint a guardian ad litem to defend, and I suppose it would not be claimed that it would not have been error in the court to have proceeded without such appointment; and yetI can not see that the case is any better by the mere appointment. If the guardian ad litem had refused to accept, his appointment-would have gone for nothing. He, however^ did inform the court that he would accept, and with that his action commenced and ended. He said he would go, but went not. If this kind of proceeding is good, it certainly furnishes a very simple mode of disposing of the case of a lunatic. A majority of the court are of' opinion that the court erred in proceeding to take a decree pro confesso, on the default of the guardian ad litem. We are-.of opinion that the court should at least have had the answer of the guardian ad litem before they proceeded to decree in the case. It is said, however, that the answer of the guardian ad litem is a mere formal matter; that he can admit nothing; and that the-court are bound to have the claim of the plaintiff proved, whether there be an answer in or not. The question again recurs to us, if it is not necessary that a guardian ad litem should act or do anything, why is it necessary that he should be appointed at all? We-have attempted to show that the thing of appointing a guardian ad litem to defend a lunatic was important and necessary as a matter of principle; but, supposing that the appointment and answer, and all the proceedings in reference to it, were merely formal, still this *would not justify dispensing with them. Forms are the means used for carrying into effect the principles of the law. Error may be committed in dispensing with these formal matters, the same as where there has been an error in principle. How many of the decrees and judgments that have been reversed on-error, have been set aside, not because there had been any abstract *478 violation of the legal rights of the parties, but merely because some ■established form of proceeding had been departed from. But was it a matter of no importance that the case should be put at issue ? Every lawyer and most litigants understand and appreciate the ■difference between being in default and being liable to have a decree taken against them pro confesso, and having a cause put at issue where it must be tried and disposed of amongst the issues.' In this very case, the complainants took advantage of the rule of court which entitles complainants, in case of default, to file a decree nisi which is to be confirmed, as a matter, of course, in twelve days from the time of filing. After the expiration of the sixty days within which the guardian was ruled to answer, the complainant, under the rule, had a right to take his decree nisi, and very shortly .after the expiration of that time he did file the present decree. The rule of practice, under which this decree was filed, gave the ■complainants an opportunity of taking a decree sooner, on account of the default, than they could by possibility obtain it, if an answer had been put in, and the case put at issue.
The complainants then had an advantage by the default, which, we think, should not be permitted against a lunatic. We think, too, the decisions uniformly sustain the proposition that a decree taken against a lunatic or an infant, pro confesso, without the answer of his guardian, is erroneous. In the case of Coleman v. The Comm’rs of the Lunatic Asylum, 6 B. Mon. 243, the question came -directly up, and it was held by the court that it was erroneous to proceed to decree without an answer from the guardian. The court, in that case, says: “Supposing, as we do, that Henry Coleman, the lunatic, was a proper party, it was erroneous to ^proceed to a decree against his estate, without an answer from some person appointed to act as a committee for him in the •defense of his suit.”
In the case of Harrison v. Rowan, 4 Wash. C. C. 207, the court very specifically lay down the rule requiring an answer, as follows : “ A lunatic, as well as an infant, though both are incompetent, and may be equally so, to act for themselves, must, in cases where their interests are sought to be affected by the decree, be made parties to the suit; and, if as defendants, this can only be done by praying process against them. In the latter case, the court appoints a ■special guardian to defend him in that suit, and he answers the bill by the guardian so appointed. A lunatic, against whom *479 process is issued answers by his committee, under an order of the -court appointing him for that purpose. If he has no committee, the court appoints some person as guardian to defend the suit and .answer for the lunatic.” Counsel for complainants in error have referred us to numerous authorities, where it has been held that it is erroneous to proceed to decree without an answer from the guardian ad litem of an infant; we think it unnecessary to refer to many of these cases, as the decisions on this point appear to be uniform. These decisions, too, we consider in point, as there can be no difference in principle, in this particular, between the action of a guardian ad litem of an infant and that of a lunatic. In the case of Beeler v. Bullitt, 4 Bibb, 11, it is said by the court: “It was clearly irregular to proceed to a hearing of a cause without an answer having been previously filed, on behalf of infants, by their guardian, and without any further proceedings being had against them after the order appointing their guardian. This irregularity is not cured by the subsecpient appearance of the defendants by their attorney. The cause must, therefore, not only be reversed but remanded to the court below for new proceedings, to commence at the order appointing a guardian.” In the case of Healy v. Gore, 4 Dana, 133, the court hold that the case was prematurely heard; the guardian who *had appeared for the infants not having answered, and say “It was the duty of the court to compel an answer or to appoint some other person guardian to defend, .and to defer the hearing of the cause until after a proper answer had been filed.”
The case of Ullery v. Blackwell's Heirs, 3 Dana, 300, is equally explicit on this point. The case of Massie v. Donaldson, 8 Ohio, 377, is in point and to the same effect.
It is said, however, that the court should not regard this as a ■decree pro confesso; but that the decree shows that evidence was heard, and that the court, from the record itself, should presume that the mortgage, notes, and all the evidence and exhibits necessary to make out complainant’s claim, was before the court below. To this we would say, in the first place, that we do not see how this decree can be considered in any other light than a decree pro confesso. The decree is filed by the complainants as a decree nisi, taking the bill as confessed; such decree can only be had where the ■complainant has a right to take the bill as confessed and treat the defendant as in default. The interest is calculated on the claim *480 tip to the filing of the decree nisi, and the decree draws interest, from that date. -The court most explicitly say that they do find, that the lunatic and his guardian are in default, and that the bill, as to them, is taken as confessed. Here we have the expressed statement of the court, the acts of the court, and the acts of the-complainants, all treating the case as an ordinary case of default, and taking a decree by confession. But the decree says that the-case came on for hearing on the bill, answer of Anderson, replication thereto, exhibits, and testimony; and it is contended that we-are to presume that the case was treated by the court as on hearing, and the decree rendered on ample testimony, as to Sturgis as-well as the other defendants. But how can any such presumption be raised from the language of the decree ? Anderson had put the case at issue previous to the time that the guardian was appointed for Sturges; the case came regularly on for hearing, so far as he-was concerned, and it is perfectly consistent *with the decree, that the evidence was offered and the case heard merely as to* Anderson’s right, without reference to the rights of Sturges. But. if evidence was offered as to Sturges and his rights, who was then-acting on his behalf to make a computation of the claims with-, which he was sought to be charged, and to see that they were properly proved ? Where was his guardian ? Are we to presume from the decree that he was present, representing the rights of Sturges ?' As the case stood, we suppose that if the court could have proceeded to make a disposition of it, they must do just as they did : find the default, and enter the decree pro confesso. They might, forth eir own satisfaction, afterwards hear evidence to sustain the-, plaintiff’s claim; it would still, however, be a decree taken on a default, and pro confesso.
In New York it has been held that the hearing of evidence to-sustain a plaintiff’s claim in a case of default and bill taken pro confesso, is a matter of which the defendant need have no notice, having no rights that he can claim in reference to the hearing of such, evidence; it is merely for the satisfaction of the court. 4 Johns.. Chy. 548.
Our own statute, Swan, 705, sec. 17, relating to the hearing of evidence on default, and petition taken as confessed, treats the subject in the same way—leaves it discretionary with the court to hear-evidence or not, and permits them to hear evidence that on a regular hearing of the cause against the defendant would not be ad *481 missible. But in judicial proceedings, as in other matters, there is-a time for everything. And evidence offered before the ground is laid for its introduction, no matter how ample and complete it maybe, amounts to nothing; and if we are right in-our former proposition, that the court could not proceed without an answer from the-guardian ad litem, it is of no consequence how much evidence was offered against Sturges, it was error to hear it out of time.
Suppose, in an ordinary case, a complainant takes a decree by default before the time that he is authorized to do it, would it cure-his case of error, that the record showed that the court, at the time the -decree was taken, had the most complete and conclusive evidence of the claim of the ^complainant ? And if the court eould not take a decree against Sturges, without an answer from his guardian ad litem, any amount of evidence that they might hear against him would not-cure the ease. Sturges was riot placed in a situation that evidence could be heard against him.'
It has been objected to this proceeding, however, that Anderson is-not a proper party to the bill of review. It is a general rule that-where different persons are interested in an account, whether in. the same right or not, they should all be made parties as mortgagors, mortgagees, etc. Story’s Eq. PI. see. 219.
It is further laid down that, where persons are affected by a common charge or burden, they must ordinarily be made parties, not only for the purpose of contesting the right or title to it, but also-for the purpose, if it should be established, of a contribution towards its discharge among themselves. Story’s Eq. PI. see. 162. In 3rd J. J. Marsh. 302, it is held that where a mortgage is executed by two, both should be made parties to a bill to foreclose. Sturges and Anderson were both necessary parties in the original proceedings ; they were equally so in the bill of review. The supreme court of the United States lay it down as an unquestionable-principle that all the parties to the original decree ought to join in the bill of review to reverse it. 8 Pet. 267.
The interests of Sturges and Anderson are so inseparably connected, that it is impossible to render any decree in the case without affecting the interests of each. The decree could not be reversed as to the interests of Sturges, without a reversal of the whole-decree. It has been said that their holding the property as tenants in common does not prevent them from severing. But the *482 difficulty of a severance does not arise so much from the character •of their estate, as from the nature of the obligation which they •have jointly assumed. Sturges and Anderson were each liable to Longworth and Horne for the whole debt, they jointly mortgaged .the property in controversy to Longworth and Horne for its security. Each of them had a right to have the whole of the property appropriated to the payment of the debt. If ^treating Sturges .and Anderson as tenants in common (as they are), we were to hold that the original decree shall stand as to Anderson, and that one-half of the property was appropriated by that decree, Sturges would have to pay the whole debt to redeem one-half of the property. He would have but one-half of the property to appropriate to■ward the payment of the whole debt. It is true that part of the ■debt has been paid by the sale of the property, but this makes no ■difference in principle; there might have been none of it appropriated in that way.
If the severance of interest is to take place, how much of the ■mortgage is to bo paid by Anderson’s half? It has not been sold; ■it has not been valued. There is no connection between the price .bid for the whole and the one-half of the pi’operty. There was no severance by which Anderson could have redeemed his share of ■the property by paying his share of the debt. In case of severance, how would the account stand between Sturges and Anderson? ■ Certainly very different from anything that could 'have arisen out -of their oi’iginal contract. If a severance was to be made, a new •decree would have to be entered even as to Anderson’s interests, both as respects the property and the debt. A court of chancery may adapt itself to the particular circumstances of a case in separating interests that are susceptible of division, but a court of ■ chancery is equally impotent with a court of law in making new con•tracts, changing the nature of obligations, or separating interests that are in their nature legally indivisible. If Sturges has a right to have the decree reversed, he has a right to be placed in the same ¡situation that he was in before its rendition ; this can only be done by an entire reversal of the whole decree.
The bill of review, however, was filed more than five years after the original decree, but within five years from the removal of Stur.ges’ disability. This presents the question whether the rights of Anderson are saved by the disability of Sturges ? Or whether Amderson, laboring under no disability, the action being necessarily *483 joint, the limitation is not a *bar to the rights of both ? In the ease of Martseller v. McLean, 7 Cranch, 156, it was held that where the statute had run as to one of several joint tenants, who were all necessary parties to a suit respecting their estate, the limitation operated on all, and that the right of action was barred. The supreme court of this state, however, in the case of Wilkins v. Philips, 3 Ohio, 49, took the opposite ground, and held that if any one of the parties who sue a writ of error is within the proviso that takes the case out of the statute of limitations, the case .is saved for all the parties. The court in that ease refer to the case of Martseller v. McLean, and also the case of Perry v. Jackson et ah, 4 Term, 516, on the authority of which Martseller v. McLean was decided, and say that they can not adopt the principle laid down in those cases, but agree with the reasoning of the courts of Connecticut and Kentucky that had adopted the contrary rule. This decision in the case of Wilkins v. Philips has been followed ever since in this state, and has been confirmed by repeated decisions, and may be considered as well settled law. In the case of Massie’s Heirs v. Matthews’ Executors, which was a bill of review, the court held that the right of reversal was an entire thing, and that some of the plaintiffs in review being within the proviso of the statute, the saving inured'to the benefit of all. The same question arose in the case of Meese v. Keefe, 10 Ohio, 362, and the court there lay down the rule thus: “ Where common interests can be severed, the protection extends no further than to him within its provisions; but where no such severance can be made, and the protection of the statute can not be secured without covering other interests, the benefit of the statute claimed by one avails all; it is so in a writ of error, which is an entire thing.” In Moore v. Armstrong the same principle is stated, and the case of Wilkins v. Philips is referred to and approved.
A majority of the court are of opinion that the court of common pleas, in proceeding to take a decree pro confeéso without an answer from the guardian of the lunatic, ^committed an error: That the interests of Sturges and Anderson can not be separated, but that they are both necessary parties to the proceeding in review; and that Sturges coming within the proviso of the statute, Anderson’s rights, as a necessary consequence, are also saved. We have thought it unnecessary to proceed further in the examination of *484 the assignment of errors. ■ The decree will therefore be reversed,, and the case remanded for .further proceedings.
Decree reversed!.
Judges Thurman and Banney dissented.